FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ADAM D. PYLE,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 2:16-CV-00172-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 18, 20. Attorney Dana C. Madsen represents Adam D. Pyle (Plaintiff); Special Assistant United States Attorney Daniel P. Talbert represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff received Supplemental Security Income (SSI) benefits as a child. Tr. 30. Upon turning 18, his case was reviewed and it was deemed that he met the definition of disability for adults. Tr. 30, 47. On September 19, 2011, a review of the case found that his disability ceased as of September 1, 2011. Tr. 31, 47.

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Plaintiff requested reconsideration of the cessation, Tr. 50, and the cessation was affirmed, Tr. 51. On February 2, 2012, Plaintiff attended a hearing with a Disability Hearing Officer. Tr. 54. The Hearing Officer determined that cessation of benefits was appropriate, but the correct cessation date was April 1, 2012. Tr. 64. Plaintiff requested a hearing by an Administrative Law Judge (ALJ). Tr. 65. On February 6, 2013, ALJ Lori Freund held a hearing and continued the matter to allow Plaintiff time to hire an attorney. Tr. 811-827. A second hearing was held on August 21, 2013, and the ALJ heard testimony from Plaintiff and vocational expert, K. Diane Kramer. Tr. 828-870. The ALJ issued an unfavorable decision on April 21, 2014. Tr. 15-28. The Appeals Council denied review on March 31, 2016. Tr. 1-7. The ALJ's April 21, 2014 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 26, 2016. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 19 years old at the date of cessation, April 1, 2012. Tr. 32. Plaintiff has an eleventh grade education followed by a GED. Tr. 610. He received services from Division of Vocational Rehabilitation but has no work history. Tr. 611-612. His alleged impairments include Asperger's syndrome, schizo-affective disorder, Ehlers-Danlos Syndrome (EDS), anxiety, irritable bowel syndrome (IBS), and a sun allergy. Tr. 210, 228, 855-859.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo,

deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established an eight-step sequential evaluation process for determining whether a person's disability has ended. 20 C.F.R. § 416.994(b)(5). This process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement. Compare 20 C.F.R. § 416.920 with 20 C.F.R. § 416.994(b)(5). A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The first step addresses whether the claimant has an impairment or combination of impairments that meet or equal the severity of listed impairments

set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.994(b)(5)(i). If the impairment does not equal a listed impairment, the second step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). If there has been medical improvement, a step three determination is made addressing whether such improvement is related to the claimant's ability to perform work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. § 416.994(b)(5)(iii).

If the answer to step three is yes, the Commissioner skips to step five and inquires whether all of the claimant's current impairments in combination are severe. At step five, if medical improvement is shown to be related to the claimant's ability to work, a determination will be made to assess whether the claimant's current impairments, in combination, are severe—that is, whether they impose more than a minimal limitation on his physical or mental ability to perform basic work activities. 20 C.F.R. § 416.994(b)(5)(v). If the answer to that inquiry is yes, the claim proceeds to step six and the ALJ must determine whether the claimant can perform past relevant work. 20 C.F.R. § 416.994(b)(5)(vi). If the claimant can perform past relevant work, his disability will be deemed to have ended. *Id*. If the claimant cannot perform his past relevant work, at step seven a limited burden of production shifts to the Commissioner to prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. § 416.994(b)(5)(vii). Similarly, if the claimant has no past relevant work, step eight mimics step seven in considering his ability to perform other work in the national economy. 20 C.F.R. § 416.994(b)(5)(viii). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical

improvement; if, however, he can perform a significant number of other jobs, disability ceases. 20 C.F.R. § 416.994(b)(5)(vii)-(viii).

Alternatively, if the answers to steps two or three is no, the evaluation proceeds to step four. At step four, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. § 416.994(b)(5)(iv). If no special exception applies, the claimant's disability will be found to continue.

While the claimant bears the burden of proving disability, *Tackett*, 180 F.3d at 1098-1099, once a claimant has been found disabled, a presumption of continuing disability arises in his favor. *Bellamy v. Sec. of Health & Human Serv.*, 755 F.2d 1380, 1381 (9th Cir. 1985). The Commissioner bears the burden of producing evidence sufficient to rebut this presumption. *Id*.

## ADMINISTRATIVE DECISION

On April 21, 2014, the ALJ issued a decision finding Plaintiff's disability under section 1614(a)(3)(A) of the Social Security Act ended on April 1, 2012 and that Plaintiff had not been disabled again since that date. Tr. 28.

The ALJ identified the most recent favorable medical decision in the case to be November 15, 2010 and deemed it the point of comparison. In that determination, Plaintiff had the medically determinable impairments of EDS and Asperger's disorder and was found to meet section 11.04B of 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17.

The ALJ then found that as of April 1, 2012, Plaintiff had the following medically determinable impairments: hypermobility syndrome; IBS; somatization disorder; attention deficit hyperactivity disorder (ADHD); anxiety disorder, not otherwise specified; and personality disorder with schizoid and dependent features. Tr. 17.

At step one, the ALJ found that Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an

improvement; if, however, he can perform a significant number of other jobs, disability ceases. 20 C.F.R. § 416.994(b)(5)(vii)-(viii).

Alternatively, if the answers to steps two or three is no, the evaluation proceeds to step four. At step four, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. § 416.994(b)(5)(iv). If no special exception applies, the claimant's disability will be found to continue.

While the claimant bears the burden of proving disability, *Tackett*, 180 F.3d at 1098-1099, once a claimant has been found disabled, a presumption of continuing disability arises in his favor. *Bellamy v. Sec. of Health & Human Serv.*, 755 F.2d 1380, 1381 (9th Cir. 1985). The Commissioner bears the burden of producing evidence sufficient to rebut this presumption. *Id*.

## ADMINISTRATIVE DECISION

On April 21, 2014, the ALJ issued a decision finding Plaintiff's disability under section 1614(a)(3)(A) of the Social Security Act ended on April 1, 2012 and that Plaintiff had not been disabled again since that date. Tr. 28.

The ALJ identified the most recent favorable medical decision in the case to be November 15, 2010 and deemed it the point of comparison. In that determination, Plaintiff had the medically determinable impairments of EDS and Asperger's disorder and was found to meet section 11.04B of 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17.

The ALJ then found that as of April 1, 2012, Plaintiff had the following medically determinable impairments: hypermobility syndrome; IBS; somatization disorder; attention deficit hyperactivity disorder (ADHD); anxiety disorder, not otherwise specified; and personality disorder with schizoid and dependent features. Tr. 17.

At step one, the ALJ found that Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17.

At step two, the ALJ determined that medical improvement had occurred as of April 1, 2012. Tr. 19.

At step three, the ALJ found the medical improvement was related to the ability to work, because as of April 1, 2012, the impairments present at Plaintiff's point of comparison, EDS and Asperger's Syndrome, no longer met or medically equaled the same listing. Tr. 19.

A step four determination was not necessary, as medical improvement was found at step two and the medical improvement was found to be related to the ability to work at step three.

At step five, the ALJ found that as of April 1, 2012, Plaintiff continued to have a severe impairment or combination of impairments. Tr. 19.

At step six, the ALJ found that as of April 1, 2012, Plaintiff had a residual functional capacity to perform work at all exertional levels with the following nonexertional limitations:

> The claimant can occasionally climb ladders, rope[s], and scaffolds. He should avoid exposure to hazardous machinery and unprotected heights and operational control of moving machinery. The claimant is limited to simple, routine, and repetitive tasks. He should work away from the general public and he can have superficial interaction with a small number of coworkers. He cannot perform tandem tasks. He can work in a low stress environment with only occasional decision-making and occasional changes in the work setting.

Tr. 19-20. The ALJ found Plaintiff had no past relevant work, resulting in step seven being skipped. Tr. 26.

At step eight, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of laundry

worker II, dishwasher, and industrial cleaner. Tr. 27. The ALJ concluded Plaintiff's disability ended as of April 1, 2012 and he had not become disabled again since that date. Tr. 27-28.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision ending benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by failing to properly weigh the medical opinions in the file.

## DISCUSSION

Plaintiff challenges the weight the ALJ assigned to Beth Fitterer, Ph.D., Dennis R. Pollack, Ph.D., Allen D. Bostwick, Ph.D., John T. Jaccard, M.D., and Norman Staley, M.D. ECF No. 18 at 13-20.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject

the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons." *Lester*, 81 F.3d at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1. Beth Fitterer, Ph.D.

On September 19, 2011, Dr. Fitterer, a state agency reviewer, reviewed Plaintiff's medical records and completed a Psychiatric Review Technique Assessment and a Mental Residual Functional Capacity Assessment (MRFCA). Tr. 456-462. Dr. Fitterer opined that Plaintiff did not have an impairment that met or medically equaled a listing. Tr. 456-458. On the MRFCA, she stated that Plaintiff was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to work in coordination with or in proximity to others without being distracted by them, and the ability to interact appropriately with the general public. Tr. 459-461. In the narrative sections of the MRFCA, she stated that "[d]espite consistent reporting of anxiety and ADHD, [claimant] is capable of performing complex tasks without significant interference of [concentration, persistence, and pace]," and that "[medical] reports social skills remain impaired. However, [claimant] is capable of superficial social interactions at school and with medical providers. He would be capable of interacting appropriately with others in the workplace." Tr. 461-462. In her decision, the ALJ gave Dr. Fitterer's opinion significant weight, summarizing the opinion as "[s]he said the claimant is capable

of complex tasks without significant interference from concentration, persistence, and pace and [s]he is capable of superficial social interactions." Tr. 24.

Plaintiff challenged the ALJ's treatment of the opinion, asserting that the ALJ failed to address all of the opinion and any portion of the opinion not explicitly rejected by the ALJ should have been included in the residual functional capacity determination. ECF No. 18 at 14. Plaintiff also argued that the ability to perform complex tasks was inconsistent with Dr. Fitterer's statement that Plaintiff would have difficulty with attention, concentration, scheduling, attendance, and tardiness.

However, the Program Operations Manual System[1] (POMS) DI 24510.060 details Social Security's Operating Policy as to the MRFCA forms complete by psychological consultants and directs that the moderate limitations provided by Dr. Fitterer do not constitute her opinion. While the provision speaks specifically to Form SSA-4734-F4-SUP, the Court finds that the premise of how a MRFCA provided by the agency is to be read can be extrapolated from this provision.

---

[1]The POMS does not impose judicially enforceable duties on the Court or the ALJ, but it may be "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587-588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010). Here, the issue is not determining the meaning of an ambiguous regulation, but instead understanding how to correctly read a form produced and distributed by the Social Security Administration to its medical consultants. Therefore, by relying on the POMS provision in this case, the Court is not allowing the provision to set a judicially enforceable duty on the ALJ, but only using it as a guide to define the parameters of a medical consultant's opinion on an agency supplied form.

Accordingly, the section of the MRFCA form that includes mental function items with limitations ranging from "not significantly limited" to "markedly limited," "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the [residual functional capacity] assessment." POMS DI 24510.060. Instead, the actual residual functional capacity assessment is recorded in the narrative provided on the MRFCA, explaining the conclusions indicated in the moderate limitations expressed above the narrative. *Id.* Therefore, the opined residual functional capacity assessment was not the moderate limitations given by Dr. Fitterer, but the narrative sections.

The opinion expressed in the narrative section is adequately represented in the residual functional capacity determination, which limits Plaintiff to simple, routine, and repetitive tasks and work away from the general public. Tr. 19-20. As such, the ALJ did not err in her treatment of Dr. Fitterer's opinion.

**2.      Dennis R. Pollack, Ph.D.**

In August of 2013, Dr. Pollack met with and administered physiological testing to Plaintiff. Tr. 715-725. The Wechsler Adult Intelligence Scale-IV (WAIS-IV) revealed a Full Scale IQ of 116, in the High Average range, and all the subtests were in the average to superior range. Tr. 718. The Minnesota Multiphasic Personality Inventory-2 (MMPI-2) gave Plaintiff "mildly elevated scores for the L scale and indicating that he was attempting to present himself in a most favorable light and that he was most likely understating his difficulties. At the same time he is reporting some unusual experiences that most people do not have." *Id.* His Aphasia Screening Test demonstrated dyscalculia. Tr. 719. Validity testing showed no indication of malingering. *Id.* The Millon Clinical Multiaxial Inventory-III (MCMI-III) gave him acceptable scores and included an elevated score for anxiety. *Id.* Dr. Pollack diagnosed Plaintiff with an anxiety disorder, ADHD, and a personality disorder with schizoid and dependent traits. Tr.

721. Dr. Pollack then completed a Mental Medical Source Statement stating that Plaintiff had a marked[2] limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 723. He also stated that Plaintiff would have a moderate[3] limitation in the ability to maintain attention and concentration for extended periods and the ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 723.

The ALJ gave Dr. Pollack's opinion little weight because (1) the intelligence test scores were inconsistent with his opinion expressed on the Mental Medical Source Statement, (2) the limitations were based on self-reports including the subjective responses on the MMPI-2 and MCMI-III, (3) the test results showing high scores in anxiety were inconsistent with the treatment records, and (4) Plaintiff's activities were inconsistent with the Dr. Pollack's conclusion of avoidance.

The ALJ's first reason for giving Dr. Pollack's opinion little weight, that the intelligence test scores were inconsistent with the opinion on the Mental Medical Source Statement, is legally sufficient. Internal inconsistencies between the physician's opinion and the physician's report meets the clear and convincing standard. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ found that "[t]he WAIS-IV results average to superior range are not indicative of difficulty with concentration, confused thinking, and forgetfulness, which Dr.

---

[2] A marked limitation is defined as a "[f]requent interference on the ability to function in a work setting." Tr. 722.

[3] A moderate limitation is defined as an "[o]ccasional interference on the ability to function in a work setting." Tr. 722.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

Pollack neglected to point out." Tr. 25. Considering the high scores on the WAIS-IV, the ALJ's finding was supported by substantial evidence and legally sufficient.

Plaintiff acknowledged that his intelligence test were better than average, but argued that the lower score in short term memory and eye-hand motor coordination had a great effect on his work performance and interaction with supervisors. ECF No. 18 at 15. Dr. Pollack recognized that Plaintiff's "lowest score was a scaled score of 9 for the Coding subtest, a measure of short term memory and eye-hand coordination." Tr. 718. However, Dr. Pollack gave no indication that this was below average or corresponded to a negative performance in specific workplace abilities. *Id*.

The ALJ's second reason for rejecting Dr. Pollack's opinion, that he relied on Plaintiff's self-reports and the subjective responses on the MMPI-2 and MCMI-III, is not legally sufficient. An ALJ may discount a treating provider's opinion if it appears it is based on a claimant's unreliable self-reports, but the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the basis provided by the ALJ was that Dr. Pollack relied on the MMPI-2 and MCMI-III and these tests were based on subjective responses from the Plaintiff. Tr. 25. The MMPI-2 is an objectively interpreted instrument with empirically validated scales possessing clearly established meanings. KENNETH S. POPE ET AL., THE MMPI, MMPI-2 AND MMPI-A IN COURT: A PRACTICAL GUIDE FOR EXPERT WITNESSES AND ATTORNEYS 12 (3rd ed. 2006). The MCMI-III is a "rationally derived scale that assesses individuals according to Millon's (*e.g.*, 1969, 1981, 1987, 1994) conceptualization of clinical and personality disorders." *Id*. at 455. Therefore, the ALJ's conclusion that Dr. Pollack's reliance on these tests equates to reliance on subjective accounts from Plaintiff, is not accurate. While the ALJ erred in this reason for the weight prescribed to Dr. Pollack's opinion, this error is harmless as she provided other legally sufficient reasons supported by substantial

evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The third reason the ALJ provided for giving Dr. Pollack's opinion little weight, that the test results showing high scores in anxiety were inconsistent with the treatment records, is legally sufficient. The ALJ found that MCMI-III results showing high levels of anxiety were not consistent with the medical records. Tr. 25. The ALJ was accurate. The MCMI-III results showed Plaintiff's Clinical Syndrome BR score was elevated for anxiety. Tr. 719. However, the record frequently showed mild anxiety or none at all. Tr. 537, 539, 541, 543, 550, 624, 642, 646, 668, 674, 699, 708, 745. While the records from Frontier Behavioral Health submitted after the ALJ hearing show an increase in anxiety starting in December of 2012, by April of 2013, it had improved to the point Plaintiff was playing games with a group on Mondays and by the end of his treatment records, his mood and affect are within normal limits. Tr. 758-771, 782, 793-794, 797-798, 801. As such, the ALJ's conclusion is supported by substantial evidence.

The ALJ's fourth reason for giving Dr. Pollack's opinion little weight, that Plaintiff's activities were inconsistent with the Dr. Pollack's conclusion of avoidance, is legally sufficient. A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). Here, Plaintiff reported that he visits friends weekly to engage in social games. Tr. 849. This is inconsistent with Dr. Pollack's conclusions of avoidance. Tr. 720. As such, the Court will not disturb the ALJ's treatment of Dr. Pollack's opinion.

### 3.     **Allen D. Bostwick, Ph.D.**

On August 22, 2012, Dr. Bostwick completed a psychological evaluation. Tr. 610-619. Dr. Bostwick diagnosed Plaintiff with a somatization disorder with probable delusional aspects associated with his physical complaints, ADHD

combined type by history, and schizotypal personality disorder. Tr. 618. Dr. Bostwick stated that Plaintiff "will be a rather poor candidate for education and/or work retraining due largely to his history of absenteeism and frequent illnesses which appear to be largely associated with this Somatization Disorder." Tr. 619. While Dr. Bostwick found Plaintiff to be a poor candidate for vocational retraining, he "recommended that [Plaintiff] continue with his mental health treatment until he becomes stabilized and demonstrates an improved track record for illness and absenteeism." *Id*. The ALJ gave Dr. Bostwick's opinion little weight because it was (1) based on Plaintiff's self-report and (2) not consistent with the substantial evidence of record. Tr. 24.

The ALJ's first reason, that it was based on Plaintiff's unreliable self-report, is legally sufficient. An ALJ may discount a treating provider's opinion if it appears it is based on a claimant's unreliable self-reports, so long as the ALJ provides the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim*, 763 F.3d at 1162. In his opinion, Dr. Bostwick concluded Plaintiff had problems with absenteeism. Tr. 619. However, that ALJ concluded that the record and Plaintiff's other testimony did not support this conclusion. Plaintiff's no-shows to appointments were not due to illness, Tr. 554, 558, 560-561, 579, 597-599, and his report of completing a three year course at the Skill Center in only six months is inconsistent with a forty percent rate of absenteeism, Tr. 612. The only information that supported this conclusion was Plaintiff's reported absenteeism. Tr. 619. Therefore, Dr. Bostwick's opinion relied heavily on Plaintiff's self-reports, which the ALJ found to be unreliable. Tr. 21. Plaintiff did not challenge the ALJ's credibility determination in his briefing.[4] ECF No. 18.

---

[4]The Court will not consider issues not addressed in Plaintiff's opening brief. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

As such, this reason is a legally sufficient reason to reject Dr. Bostwick's opinion.

The ALJ's second reason for discounting Dr. Bostwick's opinion, that it was inconsistent with the record, is legally sufficient. Inconsistency with the majority of objective evidence is a sufficient reason for rejecting a physician's opinions. *Batson*, 359 F.3d at 1195. The ALJ pointed out that Dr. Bostwick's reliance on Plaintiff's absenteeism was not supported by his education records and there was a lack of repeated injuries or illnesses to support the conclusion. Tr. 24. While Plaintiff cites letters from providers stating that Plaintiff would miss school due to his conditions, ECF No. 18 at 18, there is no evidence of Plaintiff's actual rate of absenteeism. In fact, recent medical records show that the majority of missed appointments were not medical related. *See supra*.

### 4. John T. Jaccard, M.D.

On January 24, 2013, Dr. Jaccard sent a letter stating that he was in treatment at Spokane Mental Health and was diagnosed with psychosis, not otherwise specified, rule out schizophrenia, generalised anxiety disorder, ADHD combined, and Asperger's. Tr. 620. Dr. Jaccard ended the letter with the following:

> [His] already poor social functioning has deteriorated and the Vocational Rehabilitation assessed that he was unfit for their program until his anxiety was reduced to enable learning. Initial gains in treatment have completely disappeared after he stopped attendance at a small structured high school for adolescents with significant dysfunction secondary to Axis I psychiatric disorders. Increasing symptoms are also consistent with the onset of thought disorders in the later part of the second decade of life. He is unable to live independently. Prognosis is guarded.

Tr. 620. The ALJ gave the letter little weight because (1) the most recent medical records from Dr. Jaccard was from December 2011, (2) treatment notes from Dr. Jaccard did not suggest significant symptoms, and (3) there were no records supporting a significant increase in symptoms. Tr. 25.

1     All of the ALJ's reasons focus on a lack of evidence. After the ALJ's
2 decision, Plaintiff submitted Dr. Jaccard's treatment notes from February 3, 2012
3 through August 8, 2013, Tr. 741-810, to the Appeals Council. Tr. 7, 29. While
4 this evidence was not available to the ALJ, this Court must consider evidence that
5 was submitted to the Appeals Council in determining whether the ALJ's
6 determination is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec.*
7 *Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). This new evidence demonstrates that
8 that the ALJ's reasons may not be supported by substantial evidence.
9     However, any error resulting from the ALJ's rejection of Dr. Jaccard's
10 opinion would be harmless error. *See Tommasetti*, 533 F.3d at 1038 (An error is
11 harmless when "it is clear from the record that the . . . error was inconsequential to
12 the ultimate nondisability determination."). The opinion did not prescribe any
13 functional limitations. It simply asserted poor social functioning and anxiety being
14 present. Tr. 620. The ALJ accounted for impaired social functioning and anxiety
15 in his residual functional capacity assessment. Tr. 19-20. Furthermore, the ALJ
16 provided legally sufficient reasons for rejecting Dr. Pollack's similar conclusions
17 regarding Plaintiff's anxiety, which included specific functional limitations. As
18 such, the Court finds that the ALJ's error in weighing Dr. Jaccard's opinion was
19 inconsequential to the ultimate finding of Plaintiff's ineligibility.

20     **5.    Norman Staley, M.D.**
21     On September 19, 2011, Dr. Staley reviewed the medical evidence available
22 in the record and opined that Plaintiff had a residual functional capacity with no
23 weight, postural, manipulative, or environmental restrictions. Tr. 463. The ALJ
24 gave his opinion significant weight because the opinion was supported by medical
25 evidence showing relatively normal examinations and x-rays. Tr. 24.
26     Plaintiff alleges that Dr. Staley "merely reviewed the medical record without
27 making any opinion." ECF No. 18 at 19. However, Dr. Staley stated, "[Residual
28 functional capacity] projected with no weight, postural, manipulative or

environmental restrictions." Tr. 463.  Therefore, Dr. Staley did provide an opinion.

Plaintiff next alleges that the ALJ failed to recognize the diagnosis of EDS or find it severe.  ECF No. 18 at 19.  However, the ALJ found that there was "no documented laboratory findings or objective physical findings supporting a diagnosis of [EDS]."  Tr. 19.  Regulations require that a medically determinable impairment be established by objective medical evidence, a claimant's statement of symptoms, a diagnosis, or a medical opinion will not suffice.  20 C.F.R. § 416.921.  As such, the Court will not disturb the ALJ's treatment of Dr. Staley's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.  The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 14, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE